948 F.2d 1280
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Elizabeth GOGGIN, Individually and as Executor of the Estate
of Melbourne A. Goggin, Plaintiff-Appellee,
v.
UNITED INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
 No. 90-1838.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1991.
Decided Nov. 26, 1991.
As Amended Dec. 9, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-89-728-R)
 David Edward Constine, III, Mays & Valentine, Richmond, Va., for appellant; William F. Seymour, IV, Cherry, Kerns, Abady, Seymour & Kastenbaum, Richmond, Va., for appellee.
 On Brief: D. Eugene Webb, Jr., Mays & Valentine, Richmond, Va., for appellant; Parker E. Cherry, Cherry, Kerns, Abady, Seymour & Kastenbaum, Richmond, Va., for appellee.
 E.D.Va.
 REVERSED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 United Insurance Company of America appeals from a final judgment of the district court awarding benefits to Elizabeth Goggin on her claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1988). We reverse the judgment of the district court.
 
 
 2
 The defendant United Insurance Company of America ("United") sells and services life, health, and fire insurance policies. To procure new policyholders and to service current customers, United employs service representatives who go door to door in specific geographic areas known as agencies to solicit new customers and to obtain payments from present policyholders. Melbourne A. Goggin was employed by United as a sales manager, whose duties included supervising service representatives in a specific area. Despite his position as a sales manager, Goggin, on the day of his death, was working as a service representative in an area designated as Agency 507, located in southside Richmond, Virginia.
 
 
 3
 While so engaged, Goggin collected $56.17 in premiums. At 2:45 p.m. on that date, Goggin met a fellow employee, Alvin Coles, to assist him in locating the homes of several policyholders in Agency 507. Subsequently, the two men went to a restaurant for coffee. At approximately 4:15 p.m., Goggin left the restaurant in his company car and did not return to his office. At some point, Goggin went to dinner, and around 8:00 p.m. he arrived outside his home in Richmond. While sitting in his car in his yard, he was shot and killed by an unknown assailant When the body was discovered by the police the next morning, nothing was missing from the car, and the $56.17 in collected premiums was still in Goggin's possession.*
 
 
 4
 In recognition of the fact that its employees are often required to collect and transport sums of cash, United established the Hazard Protection Program (the "Program"). The Program provides for a director who is to administer the Program, which provides that if any United sales representative or manager dies as the result of an unprovoked felonious assault "while servicing an agency," his beneficiary will be entitled to a weekly death benefit payable for ten years.
 
 
 5
 The plaintiff, Elizabeth Goggin, Melbourne Goggin's wife, filed a claim for benefits under the Program. The Program's director denied the claim on the grounds that Goggin was not "servicing an agency" when he was killed. Plaintiff then filed suit in the district court. The district court, reviewing the Program administrator's decision de novo, held that the term "servicing an agency" was ambiguous and that, under principles of insurance law, the term was to be construed strictly against United. The district court concluded that, because Goggin still had the proceeds of the day's collections upon him when he was killed and had not yet returned to his office, he was still "servicing the Agency." Accordingly, the district court ordered that the plaintiff be paid all benefits past due and that United begin paying her a weekly benefit. United filed a timely notice of appeal.
 
 
 6
 The facts as detailed were stipulated by the parties and were not disputed at trial. In light of the stipulation, the only issues on appeal are questions of law. Accordingly, it would seem the district court's decision should be decided de novo. Before turning to the applicable law, however, we address the issue of the appropriate standard of review to be applied to the Program administrator's decision denying benefits.
 
 
 7
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Court held that, in general, decisions of a plan administrator to deny benefits are to be reviewed de novo. See De Nobel v. Vitro Corp., 885 F.2d 1180, 1185-86 (4th Cir.1989).
 
 
 8
 However, if the particular plan at issue "vests in its administrator's discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself," then the administrator's decision is reviewed only for an abuse of discretion. Id. at 1186. United contends that the Program charter vests the administrator of the Program with the discretion to determine disputes and ambiguities in the Program and that, therefore, judicial review is under the standard of abuse of discretion. In support of this contention, United refers to the provision in the Program to the effect that "[t]he administrator is generally responsible for the operation of the plan, for making the rules under which the plan is run, and for seeing that the plan is administered fairly to all participants." It construes this language to vest discretion in the administrator to determine disputes and resolve ambiguities in the Program. Under this construction of the provisions of the plan, the decision of the administrator could be reviewed only for abuse of discretion. See Nobel, supra. Goggins naturally argues that no such discretionary authority was vested in the Program director and that judicial review should be de novo. We find it unnecessary to resolve these conflicting arguments since, in our view, whether review is by de novo or abuse of discretion, the benefits under the Program are payable only if the employee's death has as its cause an unprovoked felonious assault "while serving an agency." As applied to the facts of this case, it is unimportant whether the standard be de novo or abuse of discretion. The result in either event is the same.
 
 
 9
 The language of the program, construed in the light of the particular facts of this case, cannot be said to be ambiguous, as the appellant Goggin argues. At the time of his death, Goggin had physically left the area of Agency 507, he had stopped to have a meal, and he had driven to his home where he most likely intended to retire for the night. He was not collecting premiums or soliciting business when he was murdered. Though he had the day's receipts on him, he was not required to deposit the funds until the following day. He was in a company car, but United placed no restrictions on the personal use of vehicles provided by it. All of these facts demonstrate that Goggin was not "servicing an agency," but rather was engaged in his own personal activity.
 
 
 10
 For an alternative meaning to be valid and therefore render contractual language ambiguous, the alternative meaning must be reasonable. Under Goggin's interpretation of "servicing an agency," United employees would be covered twenty-four hours a day because they are not required to deposit receipts until reporting at the office the following morning. Thus, under Goggin's reading, an employee would be covered as long as he held onto the receipts, irrespective of what other activities he engaged in and no matter how unrelated or adverse to this employment his action might be. Such a construction is not, in our opinion, reasonable.
 
 
 11
 We accordingly find that under the facts of this case, Goggin was not servicing an agency when he was killed. Accordingly, the administrator properly denied benefits under the Program. The decision of the district court entering judgment in plaintiff's favor must therefore be reversed.
 
 
 12
 REVERSED.
 
 
 
 *
 Company policy did not require service representatives to report to the office at the end of the day. They were, however, required to return the next morning and deposit the collected receipts